UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                                                          Crim. No. 5:12-cr-115

George Allen

## REPORT AND RECOMMENDATION
(Docs. 97, 103)

Defendant George Allen has filed a "Motion to Vacate and/or Set Aside Petitioner's Conviction and Sentence Pursuant to 28 U.S.C. § 2255" (Doc. 97) (the "§ 2255 Motion"), in which he claims that he received ineffective assistance of counsel during the pretrial plea process. (Doc. 97 at 5.) Specifically, he asserts that, due to ineffective assistance of counsel, he rejected a written plea offer containing sentencing benefits that were unavailable after his trial. (*Id.*)

On July 24, 2013, following a jury trial, Allen was convicted by this court of the offense of engaging in a conspiracy with others to set fires on public lands in violation of 18 U.S.C. § 371. (*See* Docs. 56; 75.)[1] On December 2, 2013, Allen was sentenced by Chief United States District Court Judge Christina Reiss to a term of imprisonment of 13 months, to be followed by a two-year term of supervised release. (Doc. 75; *see also* Doc. 88 (sentencing transcript).) Allen has taken a direct appeal of that sentence to the Second Circuit Court of Appeals. *United States v. Allen*, No. 13-4846 (2d Cir. appeal docketed Dec. 12, 2013). Given that the appeal is still pending, the government has filed a "Motion of the

---

[1] The underlying offense–setting fires on public lands–is a violation of 18 U.S.C. § 1855.

United States to Dismiss Without Prejudice Allen's § 2255 Motion," arguing that the § 2255 Motion is premature. (Doc. 103.)

The court held a hearing on the government's Motion to Dismiss on September 10, 2014. That Motion and the § 2255 Motion that it seeks to dismiss are now both fully briefed and ripe for decision. For the reasons discussed below, I recommend that the government's Motion to Dismiss Without Prejudice (Doc. 103) be GRANTED, and that Allen's § 2255 Motion (Doc. 97) be DISMISSED without prejudice to renew upon completion of the direct appeal.

## **Background**

Allen was represented at trial and sentencing by Attorney Mark J. Furlan. He is represented in the direct appeal and the § 2255 Motion by new counsel, Attorney Michael K. Bachrach. In the direct appeal, Allen challenges the sufficiency of the evidence to convict on conspiracy, and the court's act of conducting a jury orientation outside his presence. (*See* Doc. 104 at 3.) In the § 2255 Motion, he asserts that he received ineffective assistance of counsel when Attorney Furlan failed to properly advise him with respect to three successive plea offers which were rejected by Allen prior to trial. (Doc. 97.)[2]

---

[2] More precisely, Allen contends that Attorney Furlan: (1) failed to explain to Allen the controlling provisions of the Federal Sentencing Guidelines, or if Furlan explained the Sentencing Guidelines to Allen, he failed to explain them with sufficient clarity to permit Allen to understand them; (2) failed to explain to Allen that the Sentencing Guidelines were advisory in nature; (3) failed to explain to Allen that a convicted person may receive a downward adjustment for a manifestation of acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines; (4) failed to advise Allen that a proposed written plea offer extended by the government to Allen included a provision that the government would not oppose a request for a downward variance from the applicable advisory Sentencing Guideline range under 18 U.S.C. § 3553(a), or if Attorney Furlan explained that provision to Allen, he did not explain it with sufficient clarity to permit Allen to understand the proposed plea offer; (5) failed to explain to Allen that the proposed plea offer included a provision whereby the government agreed to not seek leadership enhancements under the Sentencing Guidelines in the event of Allen's guilty plea; (6) did not provide Allen with a copy of the proposed plea agreement, instead merely reading it to him; and (7) wrongly

The most beneficial plea agreement that Allen rejected included provisions that the government would recommend a reduction in the Sentencing Guidelines offense-level calculation for acceptance of responsibility pursuant to USSG § 3E1.1 and that the government would not oppose an unspecified variance from the final sentencing range. (Doc. 97-3 at 5.) Two later plea offers, which were extended to Allen just prior to trial and were not reduced to writing, included an acceptance-of-responsibility recommendation under § 3E1.1.

## Analysis

As stated above, the government has filed a Motion to Dismiss Allen's § 2255 Motion without prejudice until Allen's direct appeal is concluded. (Doc. 103.) The government argues that the § 2255 Motion is premature because if Allen is successful in his direct appeal, the § 2255 Motion will be a nullity. Allen opposes the Motion to Dismiss, representing that he is scheduled to be released from custodial status by the Bureau of Prisons on or before December 23, 2014 and candidly describes his § 2255 Motion as his "only realistic chance" at reducing the length of his incarceration. (Doc. 104 at 5.)[3] He argues that a favorable result in his habeas case would conserve judicial resources, and asks that the § 2255 Motion be addressed as swiftly as possible to achieve an earlier release. (*Id.* at 5, 8.)

---

counseled Allen that there would be no benefit to pleading guilty and ignored Allen's expression of a desire to plead guilty rather than proceed to trial. (Doc. 97-1.) Allen asserts that the sum of these errors led to his decision to reject the proposed plea offer and proceed to the jury trial which resulted in his conviction.

[3] In reality, however, Allen's release is scheduled to occur sooner than December 23, 2014: the United States Probation Office has ascertained that Allen has been approved by the Bureau of Prisons for release to home confinement beginning on November 18, 2014. Allen benefits from the early release credits set forth in 18 U.S.C. § 3624(b) for good behavior. Offenders who receive a sentence of 12 months or less are not eligible for good-time credit under the statute.

3

A criminal defendant can challenge his conviction either by direct appeal to the appellate court or by collateral attack, seeking a writ of habeas corpus from the federal district court under 28 U.S.C. § 2255.  *United States v. Vilar*, 645 F.3d 543, 546 (2d Cir. 2011).  Ordinarily, defendants must exhaust their direct appeals before applying for habeas relief, as "habeas petitions filed before the petitioner has exhausted his direct appeal are generally considered premature."  *Wall v. United States*, 619 F.3d 152, 154 & n.2 (2d Cir. 2010) (per curiam); *see Vilar*, 645 F.3d at 548 ("Absent a showing that the habeas application is much more promising, judicial economy would seem to favor pursuing the direct appeal first."); *United States v. Outen*, 286 F.3d 622, 632 (2d Cir. 2002) (noting that, although there is no jurisdictional bar to a district court's adjudication of a § 2255 motion during the pendency of a direct appeal, the practice is disfavored due to concerns of judicial economy, as "the results on direct appeal may make the district court's efforts on the § 2255 motion a nullity").

Allen argues that, regardless of the result in this § 2255 case, judicial resources will be conserved.  (Doc. 104 at 5.)  According to Allen:

> [A] favorable result on the 2255 would conserve considerable judicial and appellate resources related to the appeal by allowing the appeal to then be withdrawn, and a negative result on the 2255 could likewise support judicial economy in that arguments related to the appeal of the 2255 could be quickly sought to be incorporated into the direct appeal so that one panel of the Court of Appeals reviews both operative decisions of the District Court (assuming time remained to do so).

(*Id.*)  Those arguments are not persuasive.  An appeal from an unsuccessful habeas motion could theoretically be consolidated with a direct appeal, but aside from reducing the number of appellate adjudications, "few if any judicial resources would be conserved" because "[t]he

4

consolidated appeals would entail different standards, different records, and separate analyses." *Vilar*, 645 F.3d at 548.

A successful habeas motion might obviate a direct appeal, but the converse is also true. *Id.* Thus, the rule is that defendants must pursue their direct appeal first, unless they show that their habeas application is much more promising. *See id.* (noting reasons why judicial economy favors pursuing direct appeals first). Generally, "[c]ompared to direct appeals, habeas proceedings impose tougher standards on the defendant and require more demanding showings." *Id.* Specifically, Allen has not shown that his § 2255 Motion is much more promising than his direct appeal because, as discussed below, even assuming that Attorney Furlan's performance was professionally deficient, it is unlikely that Allen will be able to make the required showing of prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).

Allen bears the burden to establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Specifically, Allen must show by a preponderance of the evidence that he would have received a lesser sentence had he received appropriate advice and accepted the government's plea offer. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). Here, Allen ultimately received all of the sentencing consideration offered by the government in the rejected plea offer. Upon conviction, Allen faced a Sentencing Guideline range of 33–41 months. (Doc. 88 at 76.) Had Allen pleaded guilty pursuant to the rejected agreement, and had he been accorded the three-level reduction for his manifestation of an acceptance of responsibility, his sentencing range would have been 24–30 months, a range far greater than his ultimate (13-month) sentence. The government also offered as part of the first rejected

plea agreement a provision to not oppose an unspecified downward departure or variance from the applicable Sentencing Guideline range.  In fact, at sentencing, the government recommended that the court vary from the Sentencing Guidelines.

Allen attempts to counter these facts with the assertion that at a resentencing where the acceptance-of-responsibility reduction would be afforded to Allen, Chief Judge Reiss would start her variance or departure analysis from a lower Sentencing Guideline range. (Doc. 97 at 32; Doc. 108 at 22.)  Allen concedes that there is no way to estimate what his sentence would have been if the "starting point" had been three points lower.  (Doc. 108 at 22.)  He argues, however, that it is reasonable to assume that the ultimate sentence would have been lower, and that a showing of even a slightly shorter sentence would prove prejudice.  (*Id.*; *see also* Doc. 97 at 19, 33 (citing *Glover v. United States*, 531 U.S. 198, 203 (2001), for proposition that any amount of actual jail time has Sixth Amendment significance).)

Other courts have rejected similar arguments as speculative.  *See Williams v. United States*, Civil Action No. 13-1377, 2014 WL 4060263, at *22 & n.10 (W.D. Pa. Aug. 14, 2014) (holding that loss of a one-level reduction could not form the basis of prejudice, and noting that "[petitioner's] argument that this court would have applied the same, or an even greater, variance is problematic.  Application of a variance is always within the discretion of the district court.  The possibility that this court would have applied the same, or a greater, variance is purely speculative" (citations omitted)); *Conjo-Berera v. United States*, Civil No. 5:10CV189-RLV, 2013 WL 4718330, at *6 (W.D.N.C. Sept. 3, 2013) (rejecting petitioner's argument that he could have received a lesser sentence if the court had granted the same downward variance to a rejected plea agreement that it did after trial), *appeal dismissed*, 558

F. App'x 312 (4th Cir. 2014) (per curiam); *East v. United States*, No. 11-3239-CV-S-RED, 2012 WL 3993450, at *1 (W.D. Mo. Sept. 11, 2012) (prejudice prong not satisfied by petitioner's speculation that, if she had pleaded guilty she might have received a lesser sentence due to a lower offense level for acceptance of responsibility); *Gaskin v. United States*, 591 F. Supp. 2d 247, 255 (W.D.N.Y. 2008) ("[E]ven assuming that Petitioner would have received a three-point reduction for acceptance of responsibility by pleading guilty, such fact would not establish prejudice.").

The *Strickland* prejudice prong does not require Allen to prove that the alleged unprofessional errors caused a *drastically* different sentence. Indeed, as Allen points out, the Supreme Court stated in *Glover* that "any amount of actual jail time has Sixth Amendment significance." 531 U.S. at 203. Allen would need only to prove that the conviction or sentence under the offer's terms "would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385. But that does not reduce the difficulty Allen faces in advancing his prejudice argument beyond speculation.

Neither is the exercise any less speculative just because Allen's coconspirator Matt Burnham received a non-incarcerative sentence after his guilty plea. According to Allen, Attorney Furlan failed to inform him "that his 'co-conspirator,' Matthew Burnham, the actual arsonist, had received a non-incarcerat[ive] sentence after pleading guilty." (Doc. 97 at 9–10; *see also* Doc. 108 at 17 (asserting that Attorney Furlan failed to recognize or explain to him that he was "unlikely to receive as lenient a sentence as Burnham if he refused the Government's plea offer and insisted on proceeding to trial.").) But just because Burnham received a non-incarcerative sentence after pleading guilty does not prove that, if Allen had also pleaded guilty, he would have received a lesser sentence.

7

A sentencing court may certainly consider sentencing disparity among codefendants under 18 U.S.C. § 3553(a)(6).  *United States v. Johnson*, 567 F.3d 40, 54 (2d Cir. 2009). Chief Judge Reiss did so at Allen's sentencing.  (*See* Doc. 88 at 80 ("I gave Matt Burnham a lesser sentence in light of the fact that he was a juvenile.  And one of the things that people pointed out as thus far he had been the only person prosecuted.  He ple[]d guilty.  And he immediately tried to undo what he had done.").)  But a guilty plea from Allen would not have altered the fundamental differences in roles and conduct between Allen and Burnham.

Indeed, Allen's contention ignores the seriousness of his offense conduct, which Chief Judge Reiss described as "a truly outrageous crime," involving a "long[-]standing pattern" of firefighters setting dangerous fires in a national forest.  (*Id.* at 78.)  The presentence report reveals that Allen, a superior officer in the volunteer fire department, admitted during the course of the investigation that he directed younger firefighters (including Burnham) to start many of the fires.  The fires created a substantial risk of death or serious bodily injury.  To argue that Allen would have received a variance even greater than the one he did receive is to engage in speculation, and ignores the nature and circumstances of the offense conduct.  In fact, Judge Reiss specifically stated at sentencing that "anything less" than a 13-month sentence would fail to reflect the seriousness of the crime.  (*Id.* at 80.)

**Conclusion**

Because Allen has not shown that his § 2255 Motion is much more promising than his direct appeal, I conclude that this case is premature. Accordingly, I recommend that the government's Motion to Dismiss Without Prejudice (Doc. 103) be GRANTED, and that Allen's § 2255 Motion (Doc. 97) be DISMISSED without prejudice to renew upon completion of the direct appeal.

Dated at Burlington, in the District of Vermont, this 23rd day of September, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).