U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 DEC -4 PM 3:47

CLERK

BY ____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. ) Case No. 5:12-cr-115
)
GEORGE ALLEN )

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
(Docs. 97, 103, 111, 112)

This matter came before the court for a review of the Magistrate Judge's September 23, 2014 Report and Recommendation ("R & R"). Defendant George Allen has filed a motion pursuant to 28 U.S.C. § 2255 that seeks to vacate, set aside, or correct a judgment and sentence imposed by this court on the grounds that he received ineffective assistance of counsel during plea negotiations. (Doc. 97.) The government has opposed the motion, (Doc. 107), and has filed a motion to dismiss without prejudice in light of Defendant's direct appeal from the entry of judgment in his case. (Doc. 103.) In his R & R, the Magistrate Judge recommended that the government's motion to dismiss without prejudice be granted. (Doc. 111.) Defendant objects to the R & R, arguing that the interests of judicial economy and fairness weigh in favor of allowing Defendant to pursue his direct appeal and § 2255 petition in tandem, particularly given his shorter term of incarceration. (Doc. 112.)

The government is represented by Assistant United States Attorney William B. Darrow. Defendant is represented by Michael K. Bachrach, Esq.

## I. Factual and Procedural Background.

### A. Proceedings in the District Court.

On September 19, 2012, Defendant was charged in a one-count Indictment with knowingly and willfully conspiring to set fire upon the public domain and upon lands under the jurisdiction of the United States in violation of 18 U.S.C. §§ 371 and 1855.

The Indictment alleged that while Defendant was serving as Captain of the Wallingford, Vermont Volunteer Fire Department, he conspired in April and May of 2008 with other volunteer firefighters to intentionally set approximately twenty-four fires so that the Wallingford Volunteer Fire Department could respond to extinguish those fires. At least two fires to which the Volunteer Fire Department responded were allegedly set at Defendant's direction in two different locations in the Green Mountain National Forest.

After his indictment, Defendant's trial counsel and the government engaged in plea negotiations that resulted in the government's offer of the January 2013 proposed plea agreement. The proposed plea agreement required Defendant to plead guilty to the one-count Indictment, and, in exchange, the government would recommend a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and that Defendant "be sentenced to a term of imprisonment at the low end of the Sentencing Guidelines range," and the government would not "oppose a downward sentencing variance under 18 U.S.C. § 3553(a)." (Doc. 97-3 at 2, 5.) The proposed plea agreement further provided: "Both parties are free to move for a departure under the Guidelines and to argue for a sentence outside the advisory sentencing range, except as otherwise set forth in this agreement." *Id.* at 6. Defendant did not accept this proposed plea agreement, nor did he accept a subsequent offer from the government that included only the government's agreement to recommend a reduction for acceptance of responsibility. After a three-day trial on July 22-24, 2013, the jury found Defendant guilty of knowingly and willfully conspiring to set fire upon the public domain and upon lands under the jurisdiction of the United States in violation of 18 U.S.C. §§ 371 and 1855.

Defendant's pre-sentence report ("PSR") calculated a Guidelines range of 33 to 41 months based on Defendant's criminal history category I and a base offense level of 20 pursuant to U.S.S.G. § 2K1.4. Under section 2K1.4(a)(2), a base offense level of 20 for a conviction under 18 U.S.C. § 1855 is appropriate if the offense "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense."

The court conducted Defendant's sentencing hearing on December 2, 2013, during which the government recommended a sentence within a range 15 to 24 months based on

a downward variance pursuant to 18 U.S.C. § 3553(a). The court adopted the PSR's guidelines range of 33 to 41 months, including application of a base offense level of 20 pursuant to U.S.S.G. § 2K1.4(a)(2) based on a finding that the offense of conviction created a substantial risk of death or serious bodily injury to other firefighters and members of the public. Considering the factors articulated in 18 U.S.C. § 3553(a), however, the court granted a downward variance from the Guidelines range and imposed a sentence of thirteen months, followed by two years of supervised release and seventy five hours of community service. The court granted Defendant's request to self-surrender to serve his term of imprisonment on January 14, 2014.

On January 6, 2014, Defendant sought a stay of execution of his sentence pending his appeal (Doc. 79), which the court denied on January 10, 2014 on the grounds that Defendant failed to identify a substantial question of law or fact likely to result in reversal or a new trial. (Doc. 83.) Defendant self-surrendered on January 14, 2014.

**B. Direct Appeal.**

On December 5, 2013, Defendant timely filed a notice of appeal, which remains pending before the Second Circuit. On September 24, 2014, Defendant filed a motion to expedite the appeal, which was granted on September 26, 2014. Oral argument was heard on November 4, 2014.

In his direct appeal, Defendant requests that his conviction be vacated because he contends the evidence was insufficient to support the jury's verdict that he knowingly joined and engaged in a conspiracy to set fires on federal lands. He alternatively seeks a new trial, arguing that the court violated his right to a fair trial under the Fifth Amendment and Rule 43(a) of the Federal Rules of Criminal Procedure by allegedly conducting jury orientation outside of Defendant's presence.

**C. Motion Pursuant to 28 U.S.C. § 2255.**

In his motion pursuant to 28 U.S.C. § 2255, Defendant argues that his trial counsel rendered ineffective assistance of counsel during the pre-trial plea process which led to Defendant's rejection of the January 2013 proposed plea agreement "containing sentencing benefits that were unavailable post-trial." (Doc. 97 at 5.) Defendant alleges

in his § 2255 motion that he preferred to plead guilty and told his trial counsel of his preference up until the start of trial, but that his trial counsel allegedly informed Defendant that he had nothing to lose by proceeding to trial rather than pleading guilty.

In his § 2255 motion, Defendant alleges that trial counsel failed to sufficiently explain the government's offer in the January 2013 proposed plea agreement that it would agree to a reduction for acceptance of responsibility, would recommend a sentence at the low end of the Guidelines range, and would not oppose any argument in favor of a downward variance, and that, specifically, trial counsel never explained the possible benefits of the government's offer that it would not oppose a downward sentencing variance pursuant to 18 U.S.C. § 3553(a). Defendant further alleges that his trial counsel was aware of his "ignorance of Federal sentencing procedure," (Doc. 97 at 7-8), yet failed to explain, or failed to sufficiently explain, the advisory nature of the Sentencing Guidelines, the Sentencing Guidelines' offense and criminal history chart, his applicable Guidelines range, that he could argue for a sentence below the Guidelines range, and that defendants who plead guilty often receive more lenient sentences as they typically receive credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Defendant further alleges that his trial counsel overestimated Defendant's base offense level, while failing to explain that a co-defendant received a non-incarcerative sentence, which Defendant claims was due to the court's conclusion that a co-defendant's conduct fell outside the heartland of a particular guideline, U.S.S.G. § 2K1.4.

On August 21, 2014, the government filed the pending motion to dismiss without prejudice, arguing that Defendant's § 2255 motion is "premature" in light of Defendant's pending direct appeal to the Second Circuit. (Doc. 103 at 1.) Defendant opposes the motion, arguing that, because it is unlikely the Second Circuit will resolve his direct appeal before his release or the adjudication of the § 2255 motion, his § 2255 motion is the only "realistic chance" at reducing his term of imprisonment. (Doc. 104 at 5.)

After a hearing on the motion to dismiss on September 10, 2014, the Magistrate Judge issued the R & R which recommends granting the motion to dismiss without prejudice. (Doc. 111.) While the R & R notes that there is no jurisdictional bar to

allowing a direct appeal and a § 2255 motion to proceed in tandem, the Magistrate Judge concluded that Defendant failed to show that his § 2255 motion was more likely to succeed than his direct appeal or that judicial economy would be fostered by permitting Defendant to pursue both avenues of relief simultaneously.

Defendant objects to the R & R's conclusions that judicial economy favors dismissal of his § 2255 motion pending completion of his direct appeal and that his § 2255 motion is less promising than his direct appeal, a determination the Magistrate Judge made upon consideration of the merits of Defendant's claim of ineffective assistance of counsel during the plea process. (Doc. 112.) Defendant maintains that a "refusal to adjudicate [his §] 2255 prior to his direct appeal will almost definitely delay his ability to seek a reduction of his sentence until after his term of imprisonment is already complete." *Id.* at 5.

Defendant is currently incarcerated at FCI Ray Brook, with his term of incarceration set to expire on approximately December 23, 2014. However, it appears that Defendant could be released earlier as he is eligible for credits for satisfactory behavior pursuant to 18 U.S.C. § 3624(b).

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### B. Whether Defendant's Pending § 2255 Motion Should Be Dismissed.

A defendant is afforded both a direct appeal from a judgment and "'one full opportunity to seek collateral review' of a judgment." *Wall v. United States*, 619 F.3d 152, 155 (2d Cir. 2010) (quoting *Vasquez v. Parrott*, 318 F.3d 387, 390 (2d Cir. 2003)). Because of the Second Circuit's preference "to adjudicate direct appeals prior to, rather than after, collateral attacks," *United States v. Vilar*, 645 F.3d 543, 548 (2d Cir. 2011), "petitions filed before the petitioner has exhausted his direct appeal are generally considered premature." *Wall*, 619 F.3d at 154. "[P]etitioners are therefore generally required to exhaust direct appeal before bringing a petition under § 2255." *United States v. Dukes*, 727 F.2d 34, 41 (2d Cir. 1984).

However, "there is no *jurisdictional* bar to a district court's adjudication of a § 2255 motion during the pendency of a direct appeal." *United States v. Outen*, 286 F.3d 622, 632 (2d Cir. 2002). "Any concern over such a practice is one of judicial economy and the concern that the results on direct appeal may make the district court's efforts on the § 2255 motion a nullity." *Id.* (citing *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) ("The divestiture of jurisdiction rule . . . is a judicially crafted rule rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.") (internal quotation marks omitted)). Whether the interests of judicial economy weigh in favor of joint adjudication turns on whether a successful direct appeal would "obviate" the need for the § 2255 motion and whether the "§ 2255 motion is more likely to succeed than his direct appeal." *Vilar*, 645 F.3d at 548.

In this case, Defendant argues that he would have pled guilty prior to his trial if properly advised of the benefits of the January 2013 proposed plea agreement. His § 2255 motion therefore seeks to vacate his conviction so that he "may be returned to a position where he can re-negotiate, accept, and receive the benefits of, a reasonable plea offer." (Doc. 97 at 34-35.) In contrast, Defendant seeks on appeal to vacate his conviction on the ground that the evidence was insufficient to support the jury's verdict on the conspiracy count, or alternatively, requests that his conviction be vacated and the case remanded for a new trial on the ground that he was denied a fair trial due to his

absence from jury orientation. While a successful § 2255 motion would result in Defendant's conviction following his guilty plea and re-sentencing under a plea agreement, a successful direct appeal would vacate his conviction, possibly result in a new trial, and ultimately "obviate[]" the need for the pending § 2255 motion. *Vilar*, 645 F.3d at 548. This outcome would thus render the court's "efforts on the § 2255 motion a nullity," regardless of the ultimate result of the § 2255 motion.[1] *Outen*, 286 F.3d at 632.

Because judicial economy generally favors pursuing a direct appeal first "[a]bsent a showing that the habeas application is much more promising," the court must also consider whether Defendant's "§ 2255 motion is more likely to succeed than his direct appeal." *Vilar*, 645 F.3d at 548. In his § 2255 motion, Defendant raises an ineffective assistance of counsel claim regarding the plea process. A defendant has "a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process," and during that process is "entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks and citations omitted). The "two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel," *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), which requires a defendant to "show that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

---

[1] While Defendant also contends that "judicial economy" would be served by allowing the § 2255 motion to proceed in the district court and consolidating an appeal from the court's decision on the § 2255 motion with the pending appeal, (Doc. 104 at 5), the Second Circuit has already rejected a similar argument, stating:

> While such consolidation would reduce the number of appellate adjudications, few if any judicial resources would be conserved. The consolidated appeals would entail different standards, different records, and separate analyses. And simultaneous adjudication of interrelated issues using different standards and different records would increase the complexity of the consolidated appeal. Thus, there is little reason to believe that a consolidated appeal would save significant time or energy compared to two separate appeals.

*United States v. Vilar*, 645 F.3d 543, 548 (2d Cir. 2011).

*Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). When a defendant claims that counsel's "ineffective advice led not to an offer's acceptance but to its rejection," then

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385. Under the second part of the *Strickland* test, the prejudice prong, "any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001).

Here, the base offense level for the offense of conviction under 18 U.S.C. § 1855 was determined by U.S.S.G. § 2K1.4, which directs courts to apply a base offense level of 20 if the offense "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense." U.S.S.G. § 2K1.4(a)(2). Defendant does not challenge in his direct appeal or in his § 2255 motion the court's application of this base offense level as procedurally incorrect. Thus, starting with a base offense level of 20, had Defendant received a three-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, his base offense level would have been reduced to 17. A base offense level of 17 and a criminal history category of I would have resulted in a Guidelines range of 24 to 30 months, a range that is still significantly above the court's thirteen-month sentence and the government's recommendation at sentencing of 15 to 24 months. The January 2013 proposed plea agreement also included a provision that the government would not oppose a downward variance pursuant to § 3553(a). At sentencing, however, the government did not oppose a downward sentencing variance and "in fact recommended one." (Doc. 107 at 13, 17.) It therefore appears that Defendant was not deprived of any of the benefits of the most-beneficial plea agreement the government offered, the January 2013 proposed plea agreement.

Moreover, there is no indication that the court would have imposed a sentence of less than thirteen months had Defendant pled guilty. The court imposed the sentence based upon the factors set forth under 18 U.S.C. § 3553(a), which included the court's consideration of Defendant's supervisory role in the Wallingford Volunteer Fire Department, his relationship with the subordinates who set the fires, and the risks to the community and public safety as a result of the fires. Regarding the history and characteristics of Defendant and his role in the offense relative to the other alleged co-conspirators, the court explained:

> Mr. Allen was the head of a clique with juveniles in it that looked up to him as a role model. They spent an awful lot of time hanging out at the Wallingford Fire Department and out of boredom this whole conspiracy to start fires occurred. Mr. Allen, like a kingpin in a drug conspiracy, immunized himself from not getting direct contact of setting the fires and had other subordinates do the job for him by texting them and putting pressure on them to set a fire so that he could be called out of work when he was bored. . . . Had he put a stop to this those juveniles would have followed suit and instead they felt pressure from Mr. Allen to do this as part of their participation in the clique. . . . He was the role model. They were younger. They were less experienced. He was in a position of command. His brother was in the other position of command and the father was the chief and they held the power structure within the department and the ability to determine who went out on fires, who was going to be on the department. And these were very young and very immature kids. . . . One thing [the government] said that, that sat with me throughout the trial is how much you all loved firefighting and that this was really a big deal in everybody's life and something really important to them. And, and you have kids out there who, looking to you as a role model. And as soon as you found out what they were doing you should have reported them, they should have been off the . . . fire department, you should have stopped it. Instead you encouraged them and suggested where they could go.

(Doc. 88 at 71-72, 78.) With regard to the nature and circumstances of the crime, the court found that it was "a truly outrageous crime," "motivated by boredom," that was "a longstanding pattern with plenty of time to stop and look around and say this is crazy what are we doing?" and that "certainly shouldn't have gone as long and involved as many fires as it did." *Id.* at 77-79. In addressing the need to avoid sentencing disparities,

the court explained that a co-defendant, Matt Burnham, received "a lesser sentence in light of the fact that he was a juvenile," at the time of sentencing "he had been the only person prosecuted," and he had pled guilty and "immediately tried to undo what he had done." *Id.* at 80. For Defendant, the court ultimately imposed a sentence of thirteen months, finding that "anything less than that fails to reflect how serious this [crime] is and the role that you played in it and how you had the authority and the position and the obligation to shut it down and instead you encouraged it, you fostered it and you kept it going." *Id.* at 80-81.

In light of the court's application of the § 3553(a) factors and the imposition of a sentence below the Guidelines range applicable under even the most beneficial proposed plea agreement, Defendant cannot establish a necessary element of his claim of ineffective assistance of counsel that his sentence "under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385. Because Defendant fails to make "a showing that the habeas application is much more promising" than the direct appeal and "is more likely to succeed," the interests of judicial economy favor dismissal of the pending § 2255 motion during the pendency of the direct appeal. *Vilar*, 645 F.3d at 548.

In addition to the interests of judicial economy, the court must also consider the "fairness to the defendant." *Vilar*, 645 F.3d at 548. Here, Defendant contends that the length of his sentence is "contextually important" because it is unfair to require him to await the conclusion of his direct appeal before proceeding with his § 2255 motion. (Doc. 104 at 6.) He argues that "the only realistic chance [he] has at reducing his sentence of incarceration prior to the completion of his sentence is through" the § 2255 motion because it is "extremely unlikely" the Second Circuit will decide the appeal prior to Defendant's release. *Id.* at 4, 5. As Defendant correctly notes, the cases addressing whether a direct appeal and § 2255 may proceed in tandem typically have involved a defendant serving a longer term of imprisonment such that there was little unfairness in forcing that defendant to await the conclusion of a direct appeal before filing a § 2255 motion.

Although Defendant may serve his entire sentence prior to the resolution of his direct appeal, he did not seek an expedited appeal until after the briefing period concluded. *See Vilar*, 645 F.3d at 549 (considering whether the government or the defendant had "done anything to delay" the appeal). Moreover, Defendant cites to no case in which a court has allowed a § 2255 motion to proceed in tandem with a direct appeal based on the length of a defendant's sentence. Indeed, while Defendant claims that there is "no reasonable likelihood" the direct appeal will be decided first, (Doc. 104 at 2), the Second Circuit may decide the direct appeal before the Magistrate Judge could decide the § 2255 motion as the underlying facts are contested.

**CONCLUSION**

For the foregoing reasons, the court hereby ADOPTS the Magistrate Judge's R & R (Doc. 111), and, accordingly, the court GRANTS the government's motion to dismiss (Doc. 103), and DISMISSES WITHOUT PREJUDICE Defendant's § 2255 motion (Doc. 97). (Docs. 97, 103, 111, 112.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 4th day of December, 2014.

Christina Reiss, Chief Judge
United States District Court